

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2003

# James Ind Inc v. Lexar Corp

Precedential or Non-Precedential: Non-Precedential

Docket 01-3697

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"James Ind Inc v. Lexar Corp" (2003). *2003 Decisions.* Paper 727.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/727

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 01-3697

JAMES INDUSTRIES, INC.,

v.

LEXAR CORPORATION;
LEXAR INTERNATIONAL LTD;
RONALD L. SALTER, individually,

Lexar Corporation;
Lexar International LTD,
Appellants

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: The Honorable D. Brooks Smith
(D.C. Civil No. 99-cv-00058)

Submitted Under Third Circuit L.A.R. 34.1(a)
March 6, 2003

Before: ROTH, BARRY, and FUENTES, Circuit Judges

(Opinion Filed: March 24, 2003 )

OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellants Lexar Corporation and Lexar International Ltd. ("Lexar") appeal the decision of the United States District Court for the Western District of Pennsylvania to dismiss their counterclaims with prejudice as a sanction for failure to comply with discovery requests and orders to compel. Because we conclude that the District Court did not abuse its discretion in dismissing Lexar's counterclaims, we will affirm the Order of October 31, 2000, dismissing Lexar's counterclaims, as well as the Order of August 24, 2001, denying Lexar's Motion for a New Trial.

## I. Facts and Procedural History

On March 18, 1999, James Industries ("James"), a distributor and manufacturer of toys, filed a complaint in the United States District Court for the Western District of Pennsylvania against Lexar. The complaint alleged: (1) breach of an exclusive distribution agreement; (2) breach of contract under the Pennsylvania Uniform Commercial Code; (3) fraudulent misrepresentation and deceit; (4) negligent misrepresentation; (5) conversion; and (6) unjust enrichment.

On May 25, 1999, the Parties entered into a stipulation that set June 30, 1999 as the deadline for Lexar to respond to the complaint; however, Lexar's counsel filed a petition to withdraw appearance on June 17, 1999.[1] The District Court granted the petition on June 21,

_____

[1]      Specifically, the petition stated that:

2

1999.  Upon securing new counsel, Lexar filed a motion for extension of time to respond to the complaint, which was granted on August 17, 1999.  Lexar filed its answer, affirmative defenses and counterclaims on August 30, 1999.  Lexar's counterclaims alleged: (1) breach of a 1997 agreement; (2) breach of a 1997 purchase order; (3) breach of a 1998 agreement; and (4) fraud.  Lexar's affirmative defenses alleged: (1) James breached the 1997 agreement and purchase order; (2) Lexar fully complied with the 1997 agreement and purchase order; (3) the 1997 agreement was not renewed in 1998 and James and Lexar entered into a new agreement; (4) James breached the 1998 agreement; (5) Lexar fully complied with the 1998 agreement; (6) James' claims are barred by fraud.

On November 2, 1999, the District Court set a discovery deadline of March 5, 2000.  On January 7, 2000, James sent Lexar notices of deposition scheduling depositions for January 25, 2000.  James sent its first request for admissions, interrogatories and request for production of documents on January 14, 2000.  Lexar then requested postponement of the deposition of Ronald Saltel ("Saltel"), President of Lexar, scheduled for January 25, 2000.  James agreed to continue the deposition and requested Lexar to provide alternate dates.  On March 6, 2002, the Parties filed a joint motion to extend the

Defendants and Petitioner have been unable to agree on matters relating to the preparation of the defense in this case including the need for timely transmittal to Petitioner of relevant documents and for a meeting with Petitioner to discuss the facts of the case.  This disagreement has made it virtually impossible for Petitioner to adequately prepare Rule 12 motions or prepare an Answer and Counterclaim before the June 13, 1999, extension date.

discovery deadline by 30 days, which was granted by the District Court. At this point, Lexar had not produced any documents or notes requested by James.

On April 4, 2000, James filed a motion to compel depositions of defendants and for an extension of time for the purpose of taking the depositions and filing pre-trial statements. James claimed that despite repeated requests, the defendants had failed to provide alternate dates for the depositions. On April 10, 2000, Lexar responded to the motion to compel by citing Ronald Saltel's illness as the primary reason for not rescheduling his deposition and claiming that Saltel had returned to good health. On May 12, 2000, the Parties agreed to a joint motion to extend time, stating that the witnesses had agreed to appear for depositions on May 17 and 18 and that the agreement of Saltel to appear on May 17 rendered moot the motion to compel.

The District Court extended the discovery deadline to June 30, 2000, and denied James' motion to compel as moot. After this extension, Lexar's counsel contacted James and indicated that Lexar would not appear for the depositions scheduled for May 17, 2000 due to Saltel's continuing health problems. Lexar also failed to produce the requested documents on May 17, 2000. James made repeated requests to take the depositions of Lexar prior to the June 30, 2000 discovery deadline but received no response from Lexar.

On June 30, 2000, James filed its second motion to compel depositions of defendants and for an extension of time for the purpose of taking the depositions. On July 20, 2000, the District Court issued an order extending the discovery period until September 5, 2000, and requiring Lexar to appear for depositions within 45 days of the

4

order. Counsel for both Parties agreed on the dates of August 22 and 23, 2000 for the depositions of Lexar. James also asked to receive the requested documents by August 16, 2000. On August 16, 2000, Lexar's second attorney filed a petition for leave to withdraw appearance, which was granted by the District Court. Lexar failed to appear for the August 22 and 23 depositions. Lexar failed to reschedule the depositions or to provide James with the requested documents prior to September 15, 2000, the deadline for James pre-trial statement at that point in time.

On September 15, 2000, James filed a motion to dismiss Lexar's counterclaims and affirmative defenses pursuant to FED. R. CIV. P. 37(b) and (d) due to defendants' failure to provide discovery and a motion for sanctions. In an order dated October 31, 2000, the District Court dismissed Lexar's counterclaims with prejudice and ordered Lexar to pay James $2,288.00 in attorneys' fees and $3.96 in costs.

On November 17, 2000, Saltel, proceeding *pro se*, filed a motion to reconsider and for extension of time. Saltel claimed to have been unable to travel because of a lengthy illness and stated that any delay by the defendants was the result of this illness. Saltel failed to provide any documentation to support this claim. Saltel claimed that his second attorney was no longer available to provide information about the lawsuit. The District Court denied the motion to reconsider but granted the request for an extension of time, providing Lexar until January 5, 2001 to submit its pre-trial statement.

On January 5, 2001, Lexar retained its third attorney and filed a motion for extension to comply with the order of October 31. On January 11, 2001, the District Court

5

issued an order granting Lexar's motion for an extension and requiring Lexar's depositions to take place by January 19, 2001. The case proceeded to trial on July 23, 2001. During the course of the trial, the District Court dismissed Saltel as a defendant. The jury returned a verdict in favor of James in the amount of $382,401.10. Lexar then filed a motion for a new trial under Rule 59, which was denied by the District Court on August 24, 2001. This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332. We exercise jurisdiction under 28 U.S.C. § 1291 over a final decision of a district court. We review the District Court's sanction of dismissal for an abuse of discretion. See Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 867-68 (3d Cir. 1984).

## III. Discussion

Lexar claims that the District Court erred in dismissing its counterclaims. Federal Rule of Civil Procedure 37(b) and (d) governs situations in which a party fails to cooperate in discovery and fails to obey court orders. A district court must apply the following factors in determining whether to impose a punitive dismissal under the rule: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." Id. at 868. In

6

this case, the District Court properly cited the <u>Poulis</u> factors, performed an analysis of Lexar's conduct in the case, and concluded that dismissal of Lexar's counterclaims was warranted.

Lexar emphasizes two arguments on appeal. First, Lexar argues that its failure to comply with discovery requests can be explained by the continuing illness experienced by Saltel, the company's president. As the District Court appropriately recognized, this claim contradicts many of the facts of record in the case. In conjunction with seeking extensions of discovery during the case, Lexar informed the Court that Saltel had returned to good health and was well enough to travel from Manitoba to Pittsburgh for a deposition. Lexar also had a history of failing to cooperate with both its own and opposing counsel prior to the alleged illness. In addition, Lexar produced little evidence to support its claim that Saltel suffered from a prolonged and serious health condition. Finally, even if Saltel suffered from health problems that prevented him from traveling to Pittsburgh for depositions, Lexar's other employees, including Saltel's two sons, should have been able to comply with discovery deadlines and produce requested documents.

Second, Lexar argues that the District Court erred in not considering the sixth <u>Poulis</u> factor, the meritoriousness of the claim or defense. "<u>Poulis</u> did not provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation easily reviewed by this Court. As we have already recognized, not all of the <u>Poulis</u> factors need to be satisfied in order to dismiss a complaint." <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1373 (3d Cir. 1992). The dismissal must be reviewed in the

7

context of a district court's experiences in dealing with the litigant.  <u>Id.</u>  Given Lexar's

repeated failures to comply with discovery deadlines, obey court orders, or cooperate with

counsel, we decline to conclude that the District Court erred by not specifically evaluating

the merits of Lexar's counterclaims, particularly given that it considered the other five

factors.

Even if the District Court erred in dismissing Lexar's counterclaims, Lexar was not

prejudiced by the error.  In seeking dismissal of Lexar's counterclaims, James also sought

to dismiss Lexar's affirmative defenses.  The District Court declined to dismiss Lexar's

affirmative defenses.  Lexar's affirmative defenses largely mirrored its counterclaims.  As

a result, Lexar presented the same facts and theories to the jury that were contained in its

counterclaims.  The jury considered Lexar's theory of the case and rejected it.

**IV.  Conclusion**

Accordingly, for the reasons stated above, we affirm the judgment of the District

Court.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

Julio M. Fuentes
Circuit Judge